Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

SEP 1 5 2025

AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

# UNITED STATES DISTRICT COURT
for the

Northern District of New York

Terrance. J. Jetter

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1.25-cv-1285(BKS)(TWD)
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☑ Yes  ☐ No

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

State of New York
NYS Department of Taxation and Finance

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Terrance J. Jetter |
| Street Address | 16 Hadden Ln. |
| City and County | City of Troy, County of Rensselaer |
| State and Zip Code | New York, 12180 |
| Telephone Number | (518) 265-5887 |
| E-mail Address | Tjetter01@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

|  |  |
|---|---|
| Name | Matthew McNamara (deceased) |
| Job or Title *(if known)* | Information Technology Specialist 4 |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

|  |  |
|---|---|
| Name | Gerard Miller (retired) |
| Job or Title *(if known)* | Director |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

|  |  |
|---|---|
| Name | Kathy Wagner (retired) |
| Job or Title *(if known)* | Manager |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

|  |  |
|---|---|
| Name | Ronald Catalano (retired) |
| Job or Title *(if known)* | Manager |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**Defendant No. 5**

    Name — Danica Linn

    Job or Title *(if known)* — Business Systems Analyst 2

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)* — Danica.Linn@tax.ny.gov

**Defendant No. 6**

    Name — Jessica Carknard

    Job or Title *(if known)* — Taxpayer Services Specialist 2

    Street Address

    City and County

    State and Zip Code

    Telephone Number — Jessica.Carknard@tax.ny.gov

    E-mail Address *(if known)*

**Defendant No. 7**

    Name — Francine Schoonmaker (retired)

    Job or Title *(if known)* — Director

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**Defendant No. 8**

    Name — Douglas Stafford

    Job or Title *(if known)* — Principal Administrative Analyst

    Street Address

    City and County

    State and Zip Code — Douglas.Stafford@tax.ny.gov

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 9

| | |
|---|---|
| Name | Mary Rider |
| Job or Title *(if known)* | Director of Human Resources (employment status unknown) |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known )* | |

Defendant No. 10

| | |
|---|---|
| Name | Todd Lewis |
| Job or Title *(if known)* | Director |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known )* | Todd.Lewis@tax.ny.gov |

Defendant No. 11

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known )* | |

Defendant No. 12

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known )* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | State of New York - NYS Dept. of Taxation and Finance |
| Street Address | Bldg. 9, W.A. Harriman State Campus |
| City and County | City of Albany, County of Albany |
| State and Zip Code | Albany, NY 12227 |
| Telephone Number | (518) 457-2900 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☑ Relevant state law *(specify, if known)*:

NYS Human Rights Law

☐ Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

III.    **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [x] Failure to hire me.
- [ ] Termination of my employment.
- [x] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*:    failure to train commensurate with peers

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

2009 to July 2025 (inclusive)

C.    I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race    African American
- [x] color    Black
- [x] gender/sex    Male
- [ ] religion
- [ ] national origin
- [x] age *(year of birth)*    1973    *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows. Attach additional pages if needed.

Page 6 of 8

Plaintiff consistently received positive performance reviews, met or exceeded all job expectations, achieved high scores on promotional exams, maintaining eligibility for promotion. Beginning in January 2009, Plaintiff's manager made derogatory remarks and comments implying he was "not a good cultural fit", and assigning him less favorable assignments than similarly situated white employees. Plaintiff denied promotion while being objectively qualified, as less qualified white employees were promoted. Discrimination reported to Human Resources on February 26, 2015. No corrective action. After complaint ,subjected to retaliatory actions, incl removal from assignments, denial of training & exclusion from key meetings. Hostile work environment & retaliation forced Plaintiff to leave his work unit in November 2017. *(additional pages to be attached)*

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

**May 2023**

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☑     issued a Notice of Right to Sue letter, which I received on *(date)*    **06/18/2025**    .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Count I – Race Discrimination (Title VII). Defendant's conduct constitutes unlawful discrimination on the basis of race in violation of Title VII. Count II – Retaliation (Title VII). Defendant retaliated against Plaintiff for engaging in protected activity. Count III – Race Discrimination (42 U.S.C. § 1981)
Defendant's conduct also violated Plaintiff's rights under 42 U.S.C. § 1981.
WHEREFORE, Plaintiff respectfully requests that this Court: (A.) Enter judgment in his favor; (B.) Declare that Defendant's acts violated federal law; (C.) Award back pay, front pay, and compensatory damages; (D.) Award punitive damages in the amount of $25,500,000; due to decades of systematic acts by pattern and practice (E.) Award reasonable attorney's fees and costs; and (F.) Grant such other relief as the Court deems just and proper.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    *Sept 15, 2025*

Signature of Plaintiff    _____

Printed Name of Plaintiff    Terrance J. Jetter

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____
Printed Name of Attorney    _____
Bar Number    _____
Name of Law Firm    _____
Street Address    _____
State and Zip Code    _____
Telephone Number    _____
E-mail Address    _____

**Master Narrative: Employment Discrimination & Retaliation Case**

**2004–2013: Early Career & Initial Patterns**

**Facts:**

- Began NYS DTF (Tax & Finance) employment as **Tax Compliance Representative 1 (TCR 1).**

- Consistently high performance, no formal discipline.

- High scores on promotional exams (e.g., PATT 100, TCR 90, Associate analyst 90).

- Observed early patterns of **favoritism toward white employees** in promotions and title changes.

**Evidence:** [Exam Score Evidence] + [Employment Record Evidence] **Comparator Employees:** Multiple white colleagues promoted ahead of you despite lower scores/experience. **Legal Relevance:**

- **Title VII** – Disparate treatment based on race.

- **ADEA** – Potential age bias as younger employees advanced faster.

- **NYSHRL** – State-level protections. **Possible Civil Service Violations:**

- Bypassing higher-scoring candidates on eligibility lists.

**2013: Jessica Carknard Case**

**Facts:**

- Jessica Carknard (white female) promoted to **TCR 2** in 2013, returned to secretarial role but retained title/salary.

- Later became Business Analyst without list eligibility (neither PCO nor PATT).

- Advanced via **lateral moves and title manipulation.**

**Evidence:** [Observed Pattern Evidence] + [Comparator Employee: Jessica Carknard] **Legal Relevance:**

- **Title VII** – Preferential treatment based on race/sex.

- **NYSHRL** – State-level protections. **Possible Civil Service Violations:**

- Advancement without required list eligibility.

- Retention of higher title without performing duties.

**2013: Danica Linn Case**

**Facts:**

- Danica Linn (white female) remained in same role for years, received multiple promotions, most recently **Business Analyst 2 – Grade 23** in 2025.

- You had direct in-line title path, high exam scores, and eligibility, but were repeatedly bypassed.

**Evidence:** [Comparator Employee: Danica Linn] + [Exam Score Evidence] **Legal Relevance:**

- **Title VII** – Disparate treatment.

- **ADEA** – Favoring younger employees. **Possible Civil Service Violations:**

- Ignoring merit-based list rankings.

**2015: Mary Rider HR Admission**

**Facts:**

- HR's Mary Rider admitted by phone that applicants were **pre-screened** before managers saw eligibility lists.

**Evidence:** [Direct Admission Evidence] + [Procedural Irregularity Evidence] **Legal Relevance:**

- **Title VII** – Potential systemic bias in screening.

- **NYSHRL** – State-level protections. **Possible Civil Service Violations:**

- Pre-screening may violate open competitive process rules.

**2017–2019: FPM Traineeship & Ratings Suppression**

**Facts:**

- Accepted into two-year traineeship in Forms & Publications Management (FPM) unit.

- Supervisor Douglas Stafford initially praised performance, intended to rate "exceeds expectations."

- **Email Evidence:** Stafford stated managers were told not to give "exceeds" ratings to trainees.

- Director Francine Schoonmaker upgraded rating after you challenged it.
- Completed traineeship with no advance placement despite strong performance.

**Evidence:** [Email Evidence + Salary Impact Evidence] **Comparator Employees:** Later white trainees who received "exceeds" ratings and advance placement. **Legal Relevance:**

- **Title VII** – Selective application of ratings policy.
- **Retaliation** – Possible link to prior complaints. **Possible Civil Service Violations:**
- Blanket denial of "exceeds" ratings to trainees contradicts merit principles.

### 2021: Promotions & Training Disparities

**Facts:**

- Promotional exam: You scored 85; Shonta Boivin (Black female) 80; Nicole Roulier (white female) 90.
- Roulier promoted to supervisor despite less tenure and lower-level experience.
- Four white females received "exceeds" ratings, advance placement, and special "bulletin board" training denied to you and Boivin.

**Evidence:** [Exam Score Evidence + Policy Contradiction Evidence + Training Opportunity Disparity] **Comparator Employees:** Nicole Roulier, Jamie L., Alysia L., Jessica A., Dawn G. **Legal Relevance:**

- **Title VII** – Disparate treatment in promotions and training.
- **NYSHRL** – State-level protections. **Possible Civil Service Violations:**
- Selective application of advance placement policy.

### July 2023: EEOC Complaint Filed

**Facts:**

- Filed EEOC complaint (Charge No. 525-2023-01576) with Investigator Rachel Wantuck.
- Alleged racial bias, age discrimination, sexism, favoritism, cronyism, retaliation.

**Evidence:** [EEOC Filing Evidence] **Legal Relevance:**

- Preserves federal claims under Title VII and ADEA. **Possible Civil Service Violations:**

- Underlying promotion and hiring irregularities.

**June 10, 2025: Promotion Denial to Jessica A.**

**Facts:**

- Interviewed for Grade 23 – Associate Administrative Analyst.

- Denied in favor of Jessica Alberti. (white female, ~3 years tenure vs. your 8).

- Promotional exam offered unusually early; you scored 90 (highest among fully eligible candidates).

- Jessica Alberti and Jesse Crawford tied at 90 but were not yet fully eligible under Civil Service rules.

**Evidence:** [Exam Score Evidence + Procedural Irregularity Evidence + Comparative Tenure Evidence] **Comparator Employees:** Jessica A., Jesse C., Shonta Boivin **Legal Relevance:**

- **Title VII** – Disparate treatment.

- **ADEA** – Favoring younger candidates.

- **Retaliation** – Possible link to EEOC filing. **Possible Civil Service Violations:**

- Early exam before list exhaustion.

- Promotion before eligibility date.

**June 2025: Performance Evaluation**

**Facts:**

- Supervisor stated you would be a good supervisor based on analytical skills.

- No formal discipline in 20+ years; consistent accolades.

**Evidence:** [Performance Evaluation Evidence + Employment Record Evidence] **Legal Relevance:**

- Supports qualification and merit arguments under Title VII/ADEA.

**June 18, 2025: EEOC Right to Sue**

**Facts:**

- EEOC complaint discharged; Right to Sue issued.

- NYS Tax Department failed to respond to EEOC.

- Claimed damages: mental anguish, anxiety, depression; hostile work environment.

**Evidence:** [Right to Sue Letter + Agency Non-Response Evidence + Medical/Emotional Harm Evidence] **Legal Relevance:**

- Opens path to federal court litigation.

## Pattern-of-Conduct Summary

1. **Favoritism toward white employees** in promotions, title changes, and training.

2. **Bypassing of eligibility lists** and merit-based rankings.

3. **Procedural irregularities** in exam scheduling, eligibility dates, and ratings policies.

4. **Retaliation** following protected activity (EEOC complaint).

5. **Racial isolation** in work units.

## Evidence Index with Overlaps

(Abbreviated here for space — in your working file, each item will be fully described with date, source, and related incidents.)

- **Email Evidence** – Stafford on "exceeds" ratings policy [Overlaps with Salary Impact Evidence].

- **Exam Score Evidence** – Multiple years [Overlaps with Comparative Tenure Evidence].

- **Direct Admission Evidence** – Mary Rider HR call [Overlaps with Procedural Irregularity Evidence].

- **Right to Sue Letter** – EEOC June 18, 2025 [Overlaps with Agency Non-Response Evidence].

## Comparator Employee Table

| Name | Demographics | Tenure vs. You | Qualifications | Advancement Path | Benefits Received | How Treatment Differs |
|------|-------------|----------------|----------------|------------------|-------------------|----------------------|
| Jessica Carknard | White female | Less | No list eligibility | Lateral moves | Retained title/salary | Advanced without duties |

| Name | Demographics | Tenure vs. You | Qualifications | Advancement Path | Benefits Received | How Treatment Differs |
|---|---|---|---|---|---|---|
| Danica Linn | White female | Similar | Less qualified | Multiple promotions | Grade 23 | Promoted ahead of you |
| Nicole Roulier | White female | Less | Lower-level work | Recalled from other city | Supervisor role | Promoted despite less tenure |
| Jessica A. | White female | Much less | Limited traineeship work | Early exam | Supervisor role | Promoted over you despite equal score |
| Jamie L., Alysia L., Dawn G. | White females | Less | Trainees | Advance placement, training | Denied to you/Boivin | |
| Shonta Boivin | Black female | Equal | Similar | Denied training | Denied | |

EEOC Form 5 (11/09)

| | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION** | Charge Presented To: | Agency(ies) Charge No(s): |
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ EEOC ☐ FEPA | 525-2023-01576 |

| | |
|---|---|
| **New York State Division Of Human Rights** | and EEOC |
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Terrance Jetter | (518) 265-5887 | 1973 |

| Street Address |
|---|
| 16 Hadden Ln. |
| TROY, NY 12180 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| State of NY, Dept Tax & Finance | 15 - 100 Employees | |

| Street Address |
|---|
| 1220 Washington Ave. Bldg 9, Rm 260 |
| ALBANY, NY 12226 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Age, Race, Retaliation | 05/01/2023 | 09/07/2023 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above named Respondent on July 5, 2002. My current position is Senior Administrative Analyst. In May 2023, I applied for the Associate Administrative Analyst position, but was denied it. In July 2023, I applied for the Business System Analyst position, but was denied it. To date, I have not been given a reason for the denial.

I believe I have been discriminated and retaliated against in the form of promotion denial because of my race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age, 49, in violation of the Age Discrimination in Employment Act of 1967.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Terrance Jetter** 09/11/2023 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Buffalo Local Office**
300 Pearl St, Suite 450
Buffalo, NY 14202
(716) 431-5007
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/18/2025

**To:** Mr. Terrance Jetter
16 Hadden Ln.
TROY, NY 12180
Charge No: 525-2023-01576

EEOC Representative and email:     RACHEL WANTUCK
Senior Investigator
rachel.wantuck@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

---

Maureen Kielt
Local Office Director

Cc:
Kimberly Boucher Furnish
NYS Department of Taxation and Finance
900 WASHINGTON AVE BLDG 9
Albany, NY 12203


Please retain this notice for your records.

Attachment to Summons and Complaint: Detailed narrative

Terrance J. Jetter

v.

State of New York

Department of Taxation and Finance

In 2006, two years after beginning my employment, I transferred into "CSIC", a sub unit of the Operations Analysis & Support unit tasked with technical operational support of the collection division, after an employee named Michael Prevost, who was a grade-18 Data Processing Fiscal Systems Analyst left for another position. I took over his duties, initially keeping my grade 11-Tax Compliance Representative title. I was offered this position after the unit canvassed internally needing assistance, and because of my unique previous work experience and expertise in the private sector immediately prior to becoming a NYS employee, I was selected. Because the nature of my new job was greatly 'out of title' for the actual work I did, I was later reclassified as a 'Grade 13-agency program aide', a broad administratively based title. This allowed me to perform relative duties 'in title', however, at a pay level far below the level of my predecessor whose duties I now performed. The unit at this time consisted of approximately 5 employees. I was the only Black male. Moreover, there were virtually no Black males or females on the entire floor consisting of hundreds of employees. Almost every Black male found in the building at large, was performing clerical or janitorial duties.

As the years went on, the unit expanded exponentially, hiring dozens of people, most starting as two-year Business Analyst traineeships that started at a salary level equivalent with mine. Being that I was already uniquely qualified and part of the unit already, I applied for these traineeships many times and was repeatedly denied and passed over for others with little or no relevant work experience both during or prior to NYS state employment, most often by young white females. The two-year traineeships at their conclusion, led to a Grade 18 salary, which was properly commensurate with my level of experience, job duties and work history, on par with the grade 18 level of my predecessor (Michael Prevost) whose duties I was now responsible for. I was highly experienced and college educated, more than suitable to be trained for growth in any position available, especially that of a business analyst, whose functions I had essentially already been performing for many years.

Page **1** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

One of the earliest examples of this imbalance was Matthew McNamara — a white, college intern I personally trained during his initial time in the unit. After completing his internship, he was later permanently hired at a salary grade similar to mine. Matthew was advanced rapidly through a series of strategic lateral moves that positioned him for promotion. Within a relatively short time, he became my direct supervisor, ultimately reaching a grade 25 managerial level in a relatively short time, while I remained stagnant in my low level clerical title for approximately 13 years.

During this time, his promotions consisted of 'lateral' movement into varying job titles in order to facilitate his upward promotional mobility. To wit, he was moved from his hiring title, to an Information Technology Specialist 1-grade 14 title that would ultimately allow him promotion into an Information Technology Specialist 2-Grade 18, and ultimately, Information Technology Specialist 4-Grade 25. I attempted to transfer into an Information Technology Specialist 1-grade 14, an entry level title (previously held by Matthew) that would ultimately allow me promotional advancement similar to his and align our supervisor/subordinate titles, but was denied. At the present time, I have current eligible standing on the supervisory level, Grade 23-Information Technology Specialist 3 promotional list with a score of 90. Despite never having worked in this title, this demonstrably shows I already had the institutional knowledge and skill set from the very beginning of my state career to achieve this level of advancement, if not for persistent interference. This unique skill set is what afforded me the opportunity to move into the CSIC unit initially.

The division director, Gerard Miller had discussed with me the chance for growth via the Senior Administrative Analyst traineeship by email (evidentiary item), however, due to the poor fiscal situation of NYS at the time, budget expenditures were limited. Director Miller recognized the scope and value of the work I was performing, and sought continued advancement and training for me which never materialized, as the lower level managers sought to keep me firmly in position despite my efforts.

In June 2013, after 7 years in the unit, two Senior Administrative Analyst traineeship positions were posted for the unit. At the time, there was only one other employee on the entire floor working in the same 'agency program aide' title as me. A young, attractive white female named Danica Linn. The job postings were an exact fit for my current skill set and would have offered me the growth I had been seeking.

Page **2** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

Danica and I both applied for the positions. However, Danica personally admitted to me upon applying that she did not feel qualified for the position, and in fact, had only applied because there were two, and fully expected the second position to be filled by me. Calling me "the most qualified and most deserving".

Danica was not a candidate on either promotional list (PCO-'professional career opportunities' & PATT-'Public Administration Traineeship Transition Program' respectively) that would afford her direct eligibility, however she could 'lateral' transfer into the position. I was eligible on the PATT list with a top score of 100. Danica ultimately was hired in late July 2013, and I was denied. Danica accepted the position, but after only a few months she resigned, as she felt unqualified for the position she was in, as well as feeling uncomfortable by her new boss Ronald Catalano, who also had oversight of my unit. Mr. Catalano seemed to have a penchant for hiring young, attractive white females to work closely with him. Once Danica resigned and returned to her former position, I expected the position to be made available once again, However, it was not, and the position was later given to another employee with close ties to Danica's unit who did not work directly with Mr. Catalano. During the first week of July 2013, after Director Miller sent an email announcement naming new hires in the department, I spoke to my other unit manager Kathy Wagner about the traineeship. I mentioned that I had applied, and was eligible and reachable on the promotion list. Her reply was that I was not on her list of candidates to be interviewed. I forwarded her the email receipt I received after applying for the position. A few days later, the other manager Mr. Catalano approached me and told me Mrs. Wagner had showed him the email acknowledgment receipt I had sent her, and again stated I never made the list of candidates to be interviewed. This still seemed odd to me, because I worked closely with them and they knew I was readily available. When Danica was approached for the position, she was literally tapped on the shoulder by Mr. Catalano and asked if she would like to interview for the position, so there was no reason that it could not happen for myself if the management chose to do so.

Page **3** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

As it became apparent that something was amiss with the hiring practices, On February 26, 2015, I sent an email to the Director of Human Resources at the time, Mary Rider, after I had applied for another Business Analyst traineeship, stating that I felt I had unfairly been denied the job opportunity. I received a phone call from Mrs. Rider that day. Mrs. Rider admitted to me that they (human resources) were pre-screening applicants and deciding which candidates would be passed to the managers, instead of letting the managers choose from all available applicants themselves and decide what method to use to hire them, either by list appointment or transfer. This is an unfair practice. As the unit continued to expand with the growth of Business Analyst hires, it seemed that all with familiar ties, began to be promoted. I.E. those who had outside social relationships with each other. I watched the job postings daily and began to notice that nearly all of the job openings that were posted, were not opportunities at all, but tailor made, specifically geared for certain people to fit oddly specific criteria to the exclusion of all others, based on collusion by the managers and just there 'for show'. As more and more opportunities were made available with the expansion of the department, I continued to apply and be denied, now seemingly because I had the audacity to challenge the unfair practices taking place within the department. Even when applying for promotion numerous times in the Tax Compliance Representative title that I had previously worked in, despite my high score of 90 on the list, those that were chosen had much lower scores, and/or very little experience and less training than I had, due to extreme employee turnover. Even being told that I "had not worked in the unit for some time", but yet promotions were given to those who had not worked in the unit much longer than I. And while technically I was not part of the compliance unit, my current job function was literally designed to make that unit function, as my job was to facilitate the behind the scenes processes for the division overall. In no way, was any amount of skill or knowledge lost by my "absence" in which I physically shared the same work floor and had constant interaction with the same people.

I was now fearful of continued employment retaliation, however, I continued to take notice of the hiring practices and favoritism being afforded white employees. Many of which left to accept promotions in other titles and/or units, but return shortly after, while retaining the promotional title and salary, performing low level secretarial duties or their previous duties. One of the most egregious cases was a young, white female named Jessica Carknard, who began employment with NYS in 2009 as a Tax Compliance Representative 1.

Page **4** of **11** Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

After approximately two years, Jessica began working as a secretary for the division directors while retaining her TCR 1 title. Jessica had taken the promotional exam as I had, and left for promotion to Tax Compliance Representative 2 in 2013, a supervisory role. After a very short period of time, Jessica returned to her secretarial role, however, she was allowed to retain her promotional title and salary, having never actually performed the duties of the position she was promoted to and performing unrelated duties in her current role. I took great interest in her situation, as unbeknownst to my co-workers, I knew Ms. Carknard before she was employed with NYS, as I worked a second job from from 2006 to 2010, as a security officer for the U.S. Dept. of Homeland Security. Ms. Carknard worked alongside me briefly as a security officer for a few months so I already had knowledge of her previous employment and personal background. Ms. Carknard remained in her secretarial role for a number of years, and eventually became a Business Analyst, despite having no relevant experience either within or outside of NYS employment and performing secretarial duties. Ms. Carknard was never on any list that would allow her such an advancement opportunity (neither PCO or PATT list). The only way she would be able to reach this title is by deliberate manipulation. In her case, she would have to actually be demoted into a lower salary title, followed by a lateral movement into a traineeship path leading to promotion. Ms. Carknard has very recently changed titles again (by lateral movement) to Taxpayer Services Specialist 2, but remains in the same role more or less. Having known her personally, I surmise this change is because the previous title she originally started with (Tax compliance representative series) was upgraded in June 2025 (largely to address the aforementioned employee turnover rate) to the Taxpayer Services Specialist series, in which she would have more familiarity with the subject of the promotional exam. As Ms. Carknard never had any actual business analyst experience, she would not likely be successful attempting the promotional exam for a technical skill set she does not possess. As a result of the title upgrade by NYS Civil Service, the Taxpayer Services Specialist series came with substantial increases across all salary grade levels and additional advancement opportunities, compared to the former title series. Again, a seemingly guided strategic move.

Page **5** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

In reference to Mrs. Danica Linn, her journey has followed a similar path. Mrs. Linn has remained largely in the same role over the course of her long career, while receiving various promotions and most recently in 2025 into a Business Analyst 2-Grade 23 title, yet remaining static. It is this type of manipulation, that has been used judiciously to favor white and/or otherwise unqualified employees. While I maintain that I have always had a direct path to promotion by direct in-line title, by eligibility and high scores on promotional exams. These exams are designed to promote based on merit, and standing on the list should largely drive hiring practices. At currently more than 23 years of NYS employment, I have consistently maintained high standing on all relevant exams and demonstrably shown that I have merit and had good working relationships with my peers.

By no means, is this an all inclusive list of examples, as there are many yet unnamed that followed this trend.

In November 2017, after being denied advancement for 13 years, and being wholeheartedly disillusioned in a hostile environment with the prospect of advancement at age 45, I applied to positions outside of my immediate area. While not first choice, I was eventually accepted into a two-year Senior Administrative Analyst traineeship in the Forms & Publications Management unit (FPM), in an adjacent building, where I am currently employed. The unit was understaffed and I took on a heavy workload, doing work far more advanced than I would normally during this learning period.

Upon my arrival in the FPM unit, I realized our work processes were done almost entirely by hand using paper and ink. Because of the vast amount of paper and filing space required to maintain records, nearly all employees did not have enough desk space to store records. I personally spearheaded an effort using my networking connections, and with permission from the unit Director Francine Schoonmaker, I had additional shelving installed on all employees' workspaces who desired it, which greatly improved organization and storage for the employees. I also noticed that the kitchen suite of appliances was very old, including the refrigerator which was no longer working properly. I then used my institutional knowledge and spearheaded a singular effort and had the entire suite of appliances (microwave, refrigerator, and coffee machine) replaced at no cost to the unit. In an effort to reduce the overwhelming workload, I evaluated one of the tasks I was performing and deduced that the process was similar in scope to that of a process that allowed analyst work to be performed with minimal oversight.

Page **6** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

I approached my supervisor Mr. Stafford and explained that we could reduce our burdensome monthly process from 12 times a year to just 4, by simply streamlining the process and processing multiple minimal changes at once without supervisory oversight. Mr. Stafford agreed and the process was changed as I had described, and this new streamlined process is in effect to this day, greatly reducing the workload of the employees.

These efforts were just indicative of my overall work ethic and innate desire to do positive things and make the overall environment a better place for all employees. I came into the unit happy to work and be out of the toxic environment I had left, not knowing that conditions would not improve in my new role.


During the course of my traineeship I was assigned Douglas Stafford as my supervisor. Mr. Stafford seemed cordial enough, but soon after, it became apparent there was underlying hostility, as when I approached him with questions regarding my work, and on one occasion he flatly told me 'no'. As in, I could not ask him questions. I was taken aback by this response, as he was my supervisor, and this being a new and unfamiliar process to me. I returned to my seat and said nothing and continued to figure things out on my own. In December 2017, the unit had a holiday gathering at a local establishment which I attended. Mr. Stafford did speak to me and apologized for what he had done and expressed that I should be able to ask him questions. I accepted his apology, which had come timely as because of the treatment I had been experiencing, I had been preparing to end my employment and return to my former position. I was told during the hiring process that the two year traineeship would result in salary advancement every six months upon satisfactory evaluation.  Mr. Stafford recognized that I had been assigned far more advanced work early on in my traineeship and was performing quite well and wanted to rate me as "exceeding expectations". However, when it came time for the actual evaluation, I did not receive this rating, I received only a rating of "meets expectations/satisfactory".

I later discovered through a payroll inquiry that I would not receive a salary increase because my rating was not "exceeds expectations". I queried Mr. Stafford about this and was told by email (evidentiary item) that managers were told not to give "exceeds" ratings. At this point, I was again taken aback. I spoke to our unit director Francine Schoonmaker about the rating & salary policy. I expressed that this was unfair, especially because I had rightfully earned an 'exceeds' rating as told to me by supervisor Mr. Stafford, but I was being given a lower rating simply because someone decided trainees shouldn't get them.

Page **7** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

Director Schoonmaker advised that I would have my rating upgraded, as this affected my salary. Mr. Stafford was promoted from supervisor to manager in the months to come. I was then placed under another supervisor, an older white woman, Shirley Bergner who was preparing for retirement.

Note, that coming into this new unit, I was once again the only Black male on the entire floor, let alone the unit. The unit had one other Black employee, a female, Shonta Boivin, who began working in the unit approximately six months prior to me. There were one or two other Black employees in adjacent work units, but all were older middle aged females. As the unit was short staffed, when hiring was opened up, nearly all hires were young, attractive white females, with the exception initially of one college age white male, who worked only a short time before leaving. I completed the full two year traineeship successfully in 2019 with no 'advance placement' (time reduction for exceptional performance). After Mrs. Bergner retired, my subsequent supervisors, Cynthia Wells and Diane Macken, told me during my next evaluation, in no uncertain terms, that despite my earlier "exceeds" rating, I would not receive one again, regardless of my work performance.

In 2021, after working in the unit approximately four years, the promotional exam was given, on which I scored 85. The only other eligible candidates were Shonta Boivin (score 80) and Nicole Roulier (score 90). Mrs. Roulier was a later addition to the unit (FPM) as she had also been a secretary for the adjacent unit sharing space with ours. Mrs. Roulier had also worked in the adjacent unit to my previous stint, prior to working in the current unit. Mrs. Roulier (a white, attractive female) also accepted a promotion in another city and left for a brief period of time, before being recalled by her director and offered the traineeship. Once again, the same pattern appeared. Shortly after completing the two year traineeship and taking the promotional exam, she was promoted to supervisor, despite her relative lack of tenure compared to mine, and low level work experience. In recent years, funding was approved to hire additional staff. Of approximately ten new staff, two were young white males and the rest young, attractive white females. Of those females who were assigned to analyst traineeships (Jamie Lanoue, Alysia Lis & Jessica Alberti) and one other existing white female (Dawn Gervais) who had been in the unit already for 8 years at the time of her title change and placement into the traineeship, all four white females were afforded 'advance placement' and salary increases by "exceeds" ratings and each completed their traineeships six months early, going against the unwritten policy not to give exceeds ratings to trainees.

Page **8** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

In addition, all four white females were given additional training to perform a special "bulletin board" unit function which is a critical function that assists in the unit's work process. Dawn Gervais, who is the longest tenured analyst of our group at approximately 10 years, exceeding the next tenured at 8 years, being myself and the Black female, Shonta Boivin, to this date have not been offered this training, nor was Ms. Boivin afforded 'advance placement' during her traineeship. It remains to be seen if the two white males will be offered the training, however, given that they are males, despite being white, it is highly unlikely.

In May 2023, having been denied promotion yet again, I filed a federal discrimination complaint with the Equal Employment Opportunity Commission (EEOC), charge number: 525-2023-01576 by Investigator Rachel Wantuck. The complaint was structured around the denial at that time, however, the long standing pattern and practice by the NYS Tax Department observed over the previous 20 years, largely predicated the bulk of the complaint, which as alleged, appears as racial bias, age discrimination, sexism, favoritism, cronyism, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and New York State Human Rights Law.

On June 10, 2025, I once again interviewed for the promotion title, Grade 23-Associate Administrative Analyst in my unit.

I was denied promotion once again, in favor of a relatively inexperienced young, white female (Jessica Alberti). Jessica Alberti is a relative new comer to the unit, to date, approaching only three years, as opposed to my eight years in the unit. To wit, the latest promotional exam was given only one and a half years after the previous exam was given, on which I had the highest score standing, between myself and Shonta Boivin, who is also black. Note, that it is highly unusual to offer a promotional exam so soon after the previous exam, when the list has not been exhausted of candidates. In this case, Mrs. Boivin and I were the only two viable candidates remaining. Some of the other recent hires, as well as the long tenured Dawn Gervais, took this exam in late 2024. Among the unit's candidates that were eligible for promotion, I once again had the highest score at 90. Coupled with 8 years of well-rounded experience in the unit, should easily merit promotion.

Two of the recent hires (the aforementioned Jessica Alberti) and a white male, Jesse Crawford, both tied with my score at 90. However, at the time the exam was given, both were new employees of the unit just a few months, which afforded them the opportunity to take the exam because of fortuitous timing.

Page **9** of **11**  Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

However, because both were new, both were given eligibility dates to reach before they could be considered for promotion according to NYS Civil Services rules. These dates were based on their expected completion dates of their full two year probationary traineeships. Note that during, the expected two year traineeship period, trainees are extremely limited in the type of work they perform.

Most work consisting of very basic, simple changes to tax filing forms, consisting of dates and numeric barcodes. Complex work requiring direct supervisory oversight is limited, and more complex work is given to more experienced analysts. At Jessica's current tenure of approximately three years, she still lacks the well-rounded experience required to be competent in providing answers and guidance to subordinate analysts with minimally 5 more years of experience with various issues and processes than her. At the very least, she is outmatched by those she would purport to supervise.

The unique nature of the unit's work does not allow for 'plug and play' interchangeable supervision. A supervisor must know the job duties and work processes intimately in order to properly oversee the unit's work. However, keeping consistent with usual practice, a younger, inexperienced white female, was selected over the longer tenured, more experienced and competent Black candidate. A review of the petitioner's entire employment history documents, shows no history of formal discipline over the course of 20 plus years, as well as consistent accolades & recommendations from supervisors, as well as the public at large. In the most recent performance evaluation in June 2025, the supervisor stated that I would be a good supervisor, based on my highly developed analytical skill in performing my duties. A sentiment that has been expressed consistently, but continues to result in denial of promotion.

In the years that followed, the workplace dynamics and my career trajectory continued to follow the same pattern. The pattern of advancement for others — and stagnation for me — became even more pronounced. The unit continued to expand, bringing in new hires at, below or above my pay grade, several of whom I was tasked with training. Despite my deep institutional knowledge, proven performance, and the fact that I was already performing duties well above my official title, advancement opportunities remained consistently out of reach.

Page **10** of **11** Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance

As the staff grew, so did the disparity in opportunities. Colleagues with far less relevant experience were quickly slotted into career-track positions, often through lateral transfers or strategic demotions designed to position them for rapid promotion. Meanwhile, I continued to apply for numerous career-track positions that matched my skills and experience, including countless traineeships, promotions and lateral transfers that would have placed me on a promotional path, but was repeatedly denied without substantive explanation even when my qualifications exceeded the posted requirements.

In some cases, the positions were filled by individuals I had personally trained, with little to no relevant prior education or experience. Some of these employees advanced to supervisory roles within just a few years, through the same promotional channels that had been closed to me. Most often, young, white females.

The pattern was unmistakable: my work was relied upon, my expertise was sought out, yet my career progression was deliberately stalled. This was not an isolated oversight — it was a sustained practice that shaped the trajectory of my employment for more than two decades.

On June 18, 2025, the federal EEOC complaint was selected for discharge at the behest of President Donald J. Trump's anti DEI (Diversity, Equity & Inclusion) campaign, and a notice of right to sue was issued. The charge was dismissed with no determination or finding of fact. Dismissal does not imply the charges are without merit. The NYS Tax Department was tasked with providing a response to the charge alleged and has failed to do so. The NYS attorney on record for the EEOC complaint is Kimberly Boucher Furnish, located at the NYS Dept. of Taxation and Finance, 900 Washington Ave. Bldg. 9, Albany, NY 12203.

Be it resolved, that petitioner has suffered mental anguish, anxiety and depression in a hostile and abusive work environment permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of my employment were thereby altered and seeks relief from the court. Petitioner hereby reserves the right to amend this complaint with additional facts, statements, evidence and testimony.

Page **11** of **11** Attachment to Summons and Complaint: Detailed narrative.

Terrance J. Jetter v. State of New York-Department of Taxation and Finance