UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERRENCE J. JETTER,

         Plaintiff,       1:25-cv-01285 (BKS/CBF)

v.

STATE OF NEW YORK NYS DEPARTMENT OF
TAXATION AND FINANCE, GERARD MILLER,
KATHY WAGNER, RONALD CATALANO, DANICA
LINN, JESSICA CARKNARD, FRANCINE
SCHOONMAKER, DOUGLAS STAFFORD, MARY
RIDER, and TODD LEWIS,

         Defendants.

_____

**Appearances:**

*Plaintiff pro se:*
Terrence J. Jetter
Troy, NY 12180

*For Defendants State of New York NYS Department of Taxation and Finance, Kathy Wagner,
Ronald Catalano, Danica Linn, Jessica Carknard, Francine Schoonmaker, Douglass Stafford,
and Todd Lewis:*
Letitia James
Attorney General for the State of New York
Anna R. Wright
Assistant Attorney General, of Counsel
300 S. State Street, Ste. 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

   Plaintiff pro se Terrence J. Jetter filed this action against Defendants State of New York

NYS Department of Taxation and Finance, Gerard Miller, Kathy Wagner, Ronald Catalano,

Danica Linn, Jessica Carknard, Francine Schoonmaker, Douglas Stafford, Mary Rider, and Todd Lewis. (Dkt. No. 1).[1] Construed liberally, Plaintiff appears to allege discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the New York State Human Rights Law, N.Y. Exec. Law § 290 et. seq. ("NYSHRL"); and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621-634 ("ADEA"). (Dkt. No. 1). Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(1), and 12(b)(5). (Dkt. No. 12).[2] The motion is fully briefed. (*See* Dkt. Nos. 12-2, 14, 15). Also before the Court is Plaintiff's motion to amend the Complaint, (Dkt. No. 20), which Defendants oppose, (Dkt. No. 21). For the reasons that follow, Defendants' motion to dismiss denied, and Plaintiff's motion for leave to file the Proposed Amended Complaint is denied.

## II.    FACTS[3]

Plaintiff, a Black, African American male born in 1973, (Dkt. No. 1, at 6), was hired by the State of New York Department of Taxation and Finance on July 5, 2002. (Dkt. No. 1, at 15). In 2006, Plaintiff transferred into the "Operations Analysis & Support unit[.]" (*Id.* at 19). Plaintiff took the position "at a pay level far below the level of [his] predecessor[,] whose duties" he thereafter performed. (*Id.*). "The unit at this time consisted of approximately 5 employees[,]" and Plaintiff was "the only Black male." (*Id.*). "[T]here were virtually no Black males or females on the entire floor consisting of hundreds of employees." (*Id.*).

---

[1] Plaintiff also named Matthew McNamara as a defendant, but he indicated that Mr. McNamara was deceased. (*See* Dkt. No. 1, at 2). On February 2, 2026, the Court dismissed dismissed the action against Mr. McNamara because Plaintiff failed to file a motion for substitution. (Dkt. No. 25).

[2] On December 17, 2025, Defendants' counsel filed a notice of appearance on behalf of Defendant Schoonmaker, (Dkt. No. 18), along with a letter indicating Defendant Schoonmaker joins in the motion to dismiss and reply, (Dkt. No. 19).

[3] These facts are drawn from the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"As the years went on," Plaintiff's unit hired "dozens of people, most starting as two-year Business Analyst traineeships that started at a salary level equivalent" to Plaintiff's, who started at Grade 11 and was later reclassified at Grade 13. (*Id.*). The traineeships led to a "Grade 18 salary," which was "on par with" the level of Plaintiff's predecessor whose duties Plaintiff had assumed. (*Id.*). Plaintiff applied for these traineeships "many times and was repeatedly passed over for others with little or no relevant work experience both during or prior to [New York State] employment, most often by young white females." (*Id.*). Plaintiff "was highly experienced and college educated, more than suitable to be trained for growth in any position available"— "especially that of a business analyst, whose functions [Plaintiff] had essentially already been performing for many years." (*Id.*).

"In June 2013," after Plaintiff had spent "7 years in the unit, two Senior Administrative Analyst traineeship positions were posted for the unit." (*Id.* at 20). "The job postings were an exact fit for [Plaintiff's] current skill set and would have offered [Plaintiff] the growth [he] had been seeking." (*Id.*). "At the time, there was only one other employee on the entire floor working in the same 'agency program aide' title" as Plaintiff: Defendant Danica Linn, a young, white female. (*Id.*). Plaintiff and Linn both applied for the positions, but Linn "personally admitted to [Plaintiff] that she did not feel qualified for the position[.]" (*Id.* at 21). Linn "was not a candidate on either promotional list [ ] that would afford her direct eligibility," while Plaintiff was eligible on one of those lists "with a top score of 100." (*Id.*).

"During the first week of July 2013," after Defendant Gerard Miller, the division director, "sent an email announcement naming new hires in the department," Plaintiff spoke to his "other unit manager, Defendant Kathy Wagner, about the traineeship." (*Id.*). Plaintiff "mentioned that [he] had applied, and was eligible and reachable on the promotion list." (*Id.*). Wagner told

3

Plaintiff he "was not on her list of candidates to be interviewed[,]" so Plaintiff "forwarded her the email receipt [he] received after applying for the position." (*Id.*). "A few days later," Defendant Ronald Catalano "approached" Plaintiff and reiterated that Plaintiff "never made the list of candidates to be interviewed[.]" (*Id.*).

In late July of 2013, Linn was hired into the position while Plaintiff was denied. Linn resigned "after only a few months" because "she felt unqualified for the position she was in[.]" (*Id.*). When Linn resigned and returned to her former position, Plaintiff "expected the position to be made available once again[,]" but it was not. (*Id.*).

"On February 26, 2015, [Plaintiff] sent an email to the Director of Human Resources at the time, [Defendant] Mary Rider[.]" (*Id.* at 22). Plaintiff "had applied for another Business Analyst traineeship," and he stated in his email that he "felt [he] had been unfairly denied the job opportunity." (*Id.*). Rider called Plaintiff that same day and told Plaintiff that human resources was "pre-screening applicants and deciding which candidates would be passed to the managers[.]" (*Id.*). "As more and more opportunities were made available with the expansion of the department, [Plaintiff] continued to apply [for positions] and be denied, now seemingly because [he] had [challenged] the unfair practices taking place within the department." (*Id.*).

"In November 2017, after being denied advancement for 13 years[,]" and at the age of 45, Plaintiff "applied to positions outside of [his] immediate area" and "was eventually accepted into a two-year Senior Administrative Analyst traineeship" in a different unit, where he is currently employed. (*Id.* at 24). "[C]oming into this new unit, [Plaintiff] was once again the only Black male on the entire floor, let alone the unit." (*Id.* at 26). "The unit had one other Black employee, a female, [ ] who began working in the unit approximately six months prior to [Plaintiff]." (*Id.*). Plaintiff worked under Defendant Francine Schoonmaker, the unit director, and was assigned

4

Defendant Douglas Stafford as his supervisor. (*Id.* at 25). Stafford "seemed cordial enough," but eventually it "became apparent there was underlying hostility" when Plaintiff approached Stafford with questions regarding Plaintiff's work. (*Id.*). "[O]n one occasion" Stafford "flatly told [Plaintiff] 'no'"—as in, Plaintiff "could not ask him questions." (*Id.*).

"In December 2017, the unit had a holiday gathering at a local establishment[,] which Plaintiff attended. Stafford "apologized to [Plaintiff] for what he had done and expressed that [Plaintiff] should be able to ask him questions." (*Id.*). Stafford "recognized that [Plaintiff] had been assigned far more advanced work early on in [his] traineeship and was performing quite well and wanted to rate [Plaintiff] as 'exceeding expectations.'" (*Id.*). When it came time for Plaintiff's "actual evaluation," however, Plaintiff "received only a rating of 'meets expectations/satisfactory.'" (*Id.*). Plaintiff later discovered "through a payroll inquiry that [he] would not receive a salary increase because [his] rating was not 'exceeds expectations.'" (*Id.*). Plaintiff asked Stafford about this and was told by email "that managers were told not to give 'exceeds ratings.'" (*Id.*). Plaintiff spoke to the unit director, Schoonmaker, about the rating and salary policy. (*Id.*). Plaintiff expressed "that this was unfair, especially because [he] had rightfully earned an 'exceeds' rating"—as Stafford had told him—but Plaintiff "was being given a lower rating simply because someone decided trainees shouldn't get them." (*Id.*). Schoonmaker "advised that [Plaintiff] would have his rating upgraded[.]" (*Id.* at 26). Plaintiff's subsequent supervisors told Plaintiff during his next evaluation "that despite [his] earlier 'exceeds' rating, [he] would not receive one again, regardless of [his] work performance." (*Id.*).

Plaintiff "completed the full two year traineeship successfully in 2019 with no 'advance placement' (time reduction for exceptional performance). (*Id.*). "In recent years, funding was approved to hire additional staff." (*Id.*). "Of approximately ten new staff, two were young white

males and the rest young [ ] white females." (*Id.*). "Of those females who were assigned to analyst traineeships[,] all four white females were afforded 'advance placement' and salary increases by 'exceeds' ratings and each completed their traineeships six months early, going against the unwritten policy not to give exceeds ratings to trainees." (*Id.*).

"In 2021, after working in the unit for approximately four years," Plaintiff took a promotional exam and scored an 85. (*Id.*). The only other eligible candidates were the Black female employee, who also had four years of experience in Plaintiff's unit and scored an 80, and a white female employee who scored a 90. (*Id.*). The white female employee "was a later addition to the unit" who had "left for a brief period of time," but was "recalled by her director and offered the traineeship." (*Id.*). The white female employee completed the two-year traineeship and was promoted to supervisor, "despite her relative lack of tenure compared to [Plaintiff's], and low level work experience." (*Id.*).

In May 2023, Plaintiff applied for an Associate Administrative Analyst position and was denied again. (*Id.* at 15, 27). In July 2023, Plaintiff "applied for the Business System Analyst Position," but was also denied it. (*Id.* at 15). In response to these denials, Plaintiff "filed a federal discrimination complaint with the Equal Employment Opportunity Commission (EEOC)[.]" (*Id.* at 15, 27). In his EEOC charge, Plaintiff stated he believed he had been "discriminated and retaliated against in the form of promotion denial because of [his] race, African American," and "because of [his] age, 49[.]" (*Id.* at 15).

On June 10, 2025, Plaintiff "once again interviewed for the [ ] Associate Administrative Analyst" promotion title. (*Id.* at 27). "Among the unit's candidates that were eligible for promotion," Plaintiff "once again had the highest score at 90" on the promotional exam. (*Id.*). "Two of the recent hires[,]" a young white female and a white male, both tied Plaintiff's score.

"[A]t the time the exam was given, both were new employees of the unit [sic] just a few months," and "fortuitous timing" "afforded them the opportunity to take the exam[.]" (*Id.*). Plaintiff was denied the promotion once again, and the position went to a young, white female who was a "new comer to the unit, [ ] approaching only three years" as opposed to Plaintiff's eight. (*Id.*).

On June 18, 2025, the EEOC issued Plaintiff a notice of right to sue. (*Id.* at 17, 29). "The charge was dismissed with no determination or finding of fact[.]" (*Id.* at 29). "A review of [Plaintiff's] entire employment history documents [ ] shows no history of formal discipline over the course of 20 plus years, as well as consistent accolades & recommendations from supervisors[.]" (*Id.* at 28). Plaintiff has "continued to apply for numerous career-track positions that matched [his] skills and experience," but Plaintiff has been "repeatedly denied without substantive explanation even when [his] qualifications exceeded the posted requirements." (*Id.* at 29). "In some cases, the positions were filled by individuals [Plaintiff] had personally trained, with little to no relevant prior education or experience. Some of these employees advanced to supervisory roles within just a few years, through the same promotional channels that had been closed to [Plaintiff]." (*Id.*). "Most often," these employees were "young, white females." (*Id.*).[4]

## III.    DISCUSSION

As a preliminary matter, the Court has considered the motion to dismiss in light of the original Complaint, and not the Proposed Amended Complaint, because, as set forth below, the motion to amend the complaint must be denied as futile. *See* discussion *infra* Section III.D.

---

[4] Plaintiff's narrative provides additional examples of individuals who were allegedly promoted over Plaintiff, despite their relative lack of experience. (*See* Dkt. No. 1, at 20 (explaining that one of the "earliest examples" of the department's "imbalance" was Matthew McNamara, "a white, college intern" Plaintiff "personally trained" who eventually became Plaintiff's direct supervisor while Plaintiff "remained stagnant in [his] low level clerical title for approximately 13 years"), 22-23 (discussing career trajectory of Defendant Jessica Carknard), 24 (discussing career trajectory of Defendant Danica Linn)).

### A.    Motion to Dismiss – Rules 12(b)(2) and 12(b)(5)

Defendants move to dismiss the Complaint under Rule 12(b)(2) and (5). (Dkt. No. 12-2, at 9). Defendants do not argue that this Court lacks a statutory basis for exercising personal jurisdiction under New York law. *See Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (explaining that "to exercise personal jurisdiction over a defendant, a district court must possess a statutory basis for doing so" as "determined by the law of the state in which the court is located") (internal quotation marks omitted). Instead, Defendants argue that Plaintiff "did not comply with CPLR § 307 to achieve service on the Department of Taxation and Finance." (Dkt. No. 12-2, at 10). Thus, Defendants' motion is, in fact, solely a motion to dismiss for insufficient service of process under Rule 12(b)(5)—not lack of personal jurisdiction under Rule 12(b)(2). *See Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990) ("[T]he defenses of lack of personal jurisdiction and insufficiency of service of process . . . while often related, are not identical."); *see also Soos v. Niagara Cnty.*, 195 F. Supp. 3d 458, 463 (W.D.N.Y. 2016) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.") (internal quotation marks omitted).

### 1.    Standard of Review

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Absent consent, this means there must be authorization for service of summons on the defendant." *Id.* A court "must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of

proving its adequacy.'" *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002)). A plaintiff must, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." *Kwon v. Yun*, No. 05-cv-1142, 2006 WL 416375, at *2, 2006 U.S. Dist. LEXIS 7386, at *6 (S.D.N.Y. Feb. 21, 2006) (citations omitted).

### 2.    Analysis

Rule 4(m) of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, "district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see also Harper v. NYC Admin. for Children's Servs.*, No. 09-cv-2468, 2010 WL 23328, at *2, 2010 U.S. Dist. LEXIS 469, at *4 (S.D.N.Y. Jan. 5, 2010) ("While a plaintiff's pro se status is no excuse for failure to serve the defendant properly and does not automatically amount to good cause for failure to serve within the time allotted by Rule 4(m), the Court may nevertheless exercise its discretion and extend the time to serve.").

Under Federal Rule 4(j)(2), "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). "Section 307(2) of the New York Civil Practice Law and Rules [("CPLR")] sets forth the requirements for serving process in New York on a state agency." *Shaw v. New York State Off. for People With Developmental Disabilities*, No. 25-cv-

00066, 2026 WL 654168, at *4, 2026 U.S. Dist. LEXIS 47514, at *13 (N.D.N.Y. Mar. 9, 2026).

Section 307(2) also applies to "service on a state officer sued solely in an official capacity[.]"

N.Y. C.P.L.R. § 307(2). Under Section 307(2), "service must be made by '(1) delivering the

summons [ ] to the chief executive officer of such agency or to a person designated by such chief

executive officer to receive service, or (2) by mailing the summons by certified mail, return

receipt requested[,] to the chief executive officer of such agency, *and* by personal service upon

the state in the manner provided by [Section 307(1)].'" *Shaw*, 2026 WL 654168, at *4, 2026 U.S.

Dist. LEXIS 47514, at *13 (quoting N.Y. C.P.L.R. § 307(2) (emphasis added)). Under section

307(1), "[p]ersonal service upon the state shall be made by delivering the summons to an

assistant attorney-general at an office of the attorney-general or to the attorney-general within the

state." N.Y. C.P.L.R. § 307(1).[5]

On October 6, 2025, Plaintiff filed an affidavit of service indicating that he served "true

and correct copies" of the summons and Complaint via certified mail, return receipt requested,

"to the Hon. Letitia James, NYS Attorney General, Office of the Attorney General" and "to the

Commissioner of Taxation and Finance" for the State of New York. (Dkt. No. 5, at 2). Plaintiff

indicated that this constituted "service on all named defendants in their official capacity,

pursuant to Federal Rule of Civil Procedure 4(j)(2) and CPLR § 307(1)[.]" (*Id.*). However, as

Defendants observe, this did not comply with the requirements of Rule 4(j)(2) and CPLR § 307

because Plaintiff "relied solely on service by mail to provide notice to the New York Office of

the Attorney General." (Dkt. No. 12-2, at 9-10).

---

[5] The Complaint does not clearly indicate whether Plaintiff intended to sue the individual Defendants solely in their official capacity. (*See* Dkt. No. 1 (naming individual Defendants without differentiating between their official and individual capacities); *but see* Dkt. No. 5 (asserting that Plaintiff has served "all named defendants in their official capacity"). Defendants contend that Plaintiff "named the Department employees in their official capacities only." (Dkt. No. 12-2, at 7 (citing Dkt. Nos. 1-1, 5)). But Plaintiff has not responded to this assertion. (*See* Dkt. No. 14). At this time, there is no evidence that Plaintiff has served any of the individual Defendants other than Stafford in their individual capacity.

On January 27, 2026, however, Plaintiff filed another Affidavit of Service indicating that he "served the summons and complaint in this case by certified mail, return receipt requested," to the Department of Taxation and Finance, and that a "licensed process server" personally served both the New York State Attorney General and Defendant Douglas Stafford. (Dkt. Nos. 22, 23, 24).[6] Plaintiff filed certified mail receipts and Affirmations of Service executed by non-party process servers reflecting the same. (*See* Dkt. Nos. 22-2, 23-2, 24-2).

At this time, Plaintiff appears to have complied with the requirements for service of process on the New York State Department of Taxation and Finance, because Plaintiff has (1) "mail[ed] the summons by certified mail, return receipt requested[,]" to the Commissioner of Taxation and Finance, (Dkt. No. 22-2), and (2) effected "personal service upon the state" by delivering the summons to the attorney general's office, (Dkt. No. 23-2). It also appears that Plaintiff has effected personal service on Defendant Stafford. (*See* Dkt. No. 24-2).

However, Plaintiff has not clearly established that the individual Defendants other than Stafford have been properly served. Plaintiff's new affidavits of service do not mention service upon any individual Defendants other than Stafford, (*see* Dkt. Nos. 22, 23, 24). Accordingly, if Plaintiff wishes to proceed against any of the individual Defendants other than Stafford, Plaintiff must file proof of service within thirty days of the date of this decision. If Plaintiff does not file proof of service within thirty days, this action will be dismissed against all of the individual Defendants other than Defendant Stafford pursuant to Rule 4(m), without prejudice.

---

[6] Dkt. Nos. 22 and 22-1 appear to be identical to the Affidavits in Dkt. Nos. 23, 23-1, 24, and 24-1. Dkt. No. 22-2 contains receipts for Plaintiff's certified mail to the Department, and 23-2 is an Affirmation of Service on the State of New York executed by a non-party on January 5, 2026. Dkt. No. 24-2 is an Affirmation of Service on Douglas Stafford, executed January 9, 2026.

**B.      Motion to Dismiss – Rule 8(a)(2)**

Defendants assert that the Complaint "should be dismissed under Rule 8, because it fails to provide sufficient notice to Defendants of the legal and factual basis for the Complaint." (Dkt. No. 12-2, at 6). Defendants contend that the Complaint "fails to give fair notice as to what statutory violations are alleged[,]" and that it "impossible for any [D]efendant to effectively answer the Complaint or prepare a defense for trial" because the Complaint "contains internally inconsistent statements regarding what claims Plaintiff is advancing[.]" (*Id.* at 7). Defendants note that Plaintiff "checked boxes for" Title VII, the ADEA, and NYSHRL, but only listed "counts" pursuant to Title VII and section 1981 in his request for relief. (*Id.* at 8). Plaintiff disagrees, arguing that the Complaint adequately identifies "[t]he parties involved," a "timeline of relevant events," the "discriminatory and retaliatory conduct alleged," and the "harm suffered as a result of that conduct." (Dkt. No. 14, at 2).

Federal Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Dismissal under this rule is appropriate in 'those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Owens v. McCall*, 5 F. App'x 15, 16 (2d Cir. 2001) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)). However, "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157-58 (2d Cir. 2017) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988)). "Rather, '[f]actual allegations alone are what matters.'" *Id.*; *c.f. Kirk v. Citigroup Glob. Markets Holdings Inc.*, No. 22-179, 2022 WL 10218518, at *2, 2022 U.S. App. LEXIS 28818, at *4 (2d Cir. Oct. 18, 2022) ("We disagree with Citigroup's argument, which it advanced in district court, that Kirk—a pro se

12

plaintiff—was required to cite specific statutes to plead a violation of federal law sufficient to confer federal question jurisdiction.").

Here, Plaintiff—proceeding pro se—has set forth facts surrounding his employment at the Department that make the "true substance" of his claims very clear. *See Owens*, 5 F. App'x at 16. In completing his pro se form Complaint, Plaintiff checked off boxes indicating that Defendants discriminated against him on the basis of his "race," "color," "gender/sex," and "age." (Dkt. No. 1, at 6). In indicating the basis for this Court's jurisdiction, Plaintiff checked the boxes for Title VII, the ADEA, and wrote in "NYS Human Rights Law." (*Id.* at 5). While the Court agrees that Plaintiff does not consistently identify which discrimination statutes should apply to this action, (*see* Dkt. No. 1, at 5, 7-8, 29), the Court cannot find that the Complaint is "so confused, ambiguous, vague, or otherwise unintelligible" that the Court cannot determine its true substance, *see Owens*, 5 F. App'x at 16. Plaintiff's failure to consistently cite the "correct" statute does not affect the merits of his claims. *See McLeod*, 864 F.3d at 157-58. Accordingly, the Court will not dismiss the Complaint under Rule 8(a)(2).

### C.      Motion to Dismiss – Rules 12(b)(1) and 12(b)(6)

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 12-2, at 11-12). However, "dismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007).

### 1.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### 2.    Analysis

Defendants argue that the Complaint must be dismissed as to Plaintiff's Title VII, ADEA, and NYSHRL claims because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 12-2, at 11-12). Defendants assert that Plaintiff "complained of only two distinct instances of not being internally hired for positions in May and July 2023[,]" while the Complaint "discusses a wide range of other incidents dating back to 2009." (*Id.*). Defendants also contend that Plaintiff "made no mention of the [NYSHRL] or any of the [D]efendants other than the Department" in his EEOC charge. (*Id.* at 12). Plaintiff disagrees, arguing that [t]he allegations in the Complaint include discriminatory and retaliatory acts that occurred within the statutory time period[,]" and

that "[e]arlier incidents are included as part of an ongoing and continuous pattern of discrimination relevant to the present claims." (Dkt. No. 14, at 1-2).

Preliminarily, the Court notes that there is no exhaustion requirement under the NYSHRL. *See Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 164 n.12 (E.D.N.Y. 2021) (citing *Ross-Caleb v. City of Rochester*, 512 F. App'x 17, 17–18 (2d Cir. 2013)); *Mitchell-Miranda v. City of New York*, No. 08-cv-4031, 2011 WL 1210202, at *10 n.3, 2011 U.S. Dist. LEXIS 31130, at *26 n.3 (S.D.N.Y. Mar. 24, 2011).[7] Thus, to the extent the Complaint can be read to allege NYSHRL claims against the individual Defendants in their individual capacities, those claims would not be subject to dismissal for failure to exhaust.

With respect to Plaintiff's Title VII claims, "Although a plaintiff is not required to explicitly plead or demonstrate exhaustion at the pleading stage, a court should nonetheless grant a motion to dismiss pursuant to 12(b)(6) for failure to exhaust if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." *Arnold v. Rsch. Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 286-87 (E.D.N.Y. 2016) (internal citation omitted).

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quoting 42 U.S.C. § 2000e-5). "[T]he administrative exhaustion requirement is the same under the ADEA as it is under Title VII." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). "An exception to the exhaustion requirement may be made for claims not formally asserted before the agency if they

---

[7] While Defendants cite to *Branker v. Pfizer, Inc.* to support their contention that the NYSHRL requires a plaintiff to exhaust their administrative remedies before filing suit, *Branker* in fact says the opposite. (*See* Dkt. No. 12-2, at 11 (citing *Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997) ("Branker's claim under the NYSHRL is not administratively barred, because that statute contains no requirement of exhaustion of administrative remedies."))).

are 'reasonably related' to those properly filed with the agency." *Moore v. DeJoy*, 600 F. Supp. 3d 332, 343 (S.D.N.Y. 2022) (citing *Williams*, 458 F.3d at 70).

"There are three types of claims which may be considered 'reasonably related' for purposes of satisfying the exhaustion requirement: (1) claims that 'fall within the scope of the [administrative agency's] investigation which can reasonably be expected to grow out of the charge of discrimination;' (2) claims that allege retaliation for filing an administrative charge; and (3) claims that allege 'further incidents of discrimination carried out in the same manner alleged in [the administrative] charge.'" *Wilson-Richardson v. Regional Transit Serv., Inc.*, 948 F. Supp. 2d 300, 305 (W.D.N.Y. 2013) (quoting *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 455 (2d Cir. 2009)). "In examining what issues would be expected to 'grow out of the charge of discrimination,' the Court looks to 'the factual allegations made in the . . . charge itself,' and determines 'whether the complaint filed with the [administrative agency] gave that agency adequate notice to investigate discrimination on both bases.'" *Id.* (quoting *Williams*, 458 F.3d at 70). *See also Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) ("[T]he 'reasonably related' inquiry requires a fact-intensive analysis."). "This exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotations and citation omitted).

Here, Defendants have cited no applicable caselaw supporting their position that Plaintiff failed to exhaust his administrative remedies.[8] While it is true that Plaintiff's EEOC charge refers specifically to Defendants' failure to promote him in May and July of 2023, (*see* Dkt. No. 1, at 15), Defendants do not explain why none of the claims in the Complaint are "reasonably related" to the claims filed with the EEOC. *See Wilson-Richardson*, 948 F. Supp. 2d at 305. Defendants have not articulated why the 2023 allegations in the Complaint could not have fallen "within the scope of" the EEOC's investigation which could "reasonably be expected to grow out of" Plaintiff's EEOC charge. *See id.* Defendants also do not explain why Plaintiff's subsequent promotion denial on June 10, 2025, *after* filing his EEOC charge and before it was "selected for discharge," (*see* Dkt. No. 1, at 27, 29), could not constitute "retaliation for filing an administrative charge" or a "further incident[ ] of discrimination carried out in the same manner alleged in [the administrative] charge.'" *See Wilson-Richardson*, 948 F. Supp. 2d at 305.[9]

For the first time in their reply brief, Defendants argue that Plaintiff "only claimed age and race discrimination as well as retaliation" while the Complaint adds "color and gender," and that the Complaint added allegations of "failure to hire, failure to train and unequal terms and conditions of employment" where the charge "only talks about failure to promote[.]" (Dkt. No. 15, at 8). But Defendants still do not support their position with any specific caselaw on these points—and, in any event, "arguments [ ] raised for the first time in reply briefs need not be considered." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017). Accordingly, Defendants' motion to dismiss for failure to exhaust is denied. *See Clarke v.*

---

[8] Defendants have more thoroughly briefed the exhaustion issue in their brief in opposition to Plaintiff's motion to amend, but this brief only addresses the sufficiency of the allegations in the Proposed Amended Complaint. (*See* Dkt. No. 21, at 7-9).

[9] The Court notes that neither party has specifically addressed Plaintiff's earlier claims but Plaintiff does not appear to rely on his earlier claims. (*See* Dkt. No. 14, at 2 ("Earlier incidents are included as part of an ongoing and continuous pattern of discrimination relevant to the present claims.")).

*Antonini*, No. 21-cv-1877, 2022 WL 4387357, at *5, 2022 U.S. Dist. LEXIS 171707, at *13 (S.D.N.Y. Sept. 22, 2022) (denying motion to dismiss where defendants "fail[ed] to provide any arguments or legal authority supporting their position"); *accord Bisson v. Reppel*, No. 13-cv-245, 2014 WL 3386059, at *4, 2014 U.S. Dist. LEXIS 92954, at *10 (D. Vt. July 9, 2014).

### D.        Motion to Amend the Complaint

On December 29, 2025, Plaintiff filed a letter motion seeking leave to amend and a Proposed Amended Complaint. (Dkt. No. 20). In his letter motion, Plaintiff states that he "seeks to clarify party roles, narrow the temporal scope of actionable conduct, and align the pleadings with exhaustion requirements, without adding new causes of action or expanding the case beyond its original core." (*Id.* at 1). The Proposed Amended Complaint proceeds solely against the New York State Department of Taxation and Finance and Douglas Stafford, and designates Defendants Lewis, Wagner, Catalano, Miller, Rider, Linn, Carknard, and Schoonmaker as "relevant non-parties" rather than as Defendants. (Dkt. No. 20-1, at 4-5). There is no reference to the NYSHRL or section 1981 in the Proposed Amended Complaint, (*see generally* Dkt. No. 20-1). Defendants oppose amendment, arguing that the Proposed Amended Complaint "alleges claims barred by sovereign immunity and statute, claims that have not been properly exhausted, and claims that do not meet the pleading standards." (Dkt. No. 21, at 5).

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*,

18

2 F.4th 70, 81 (2d Cir. 2021)). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 452 (S.D.N.Y. 2017) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).

Defendants argue in their opposition to Plaintiff's motion for leave to amend that Plaintiff's ADEA claim is barred by sovereign immunity. (Dkt. No. 21, at 6). Defendants contend that states "are immune from suits brought pursuant to the ADEA[,]" and that this immunity extends to "state employees sued in their official capacities and state agencies." (*Id.*). The Court agrees. "Because state sovereign immunity is 'a jurisdictional limitation on the power of federal courts,' it may deprive such a court 'of subject matter jurisdiction[.]'" *Baroni v. Port Auth. of New York & New Jersey*, 161 F.4th 48, 54 (2d Cir. 2025) (first quoting *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001), then quoting *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004)). "Accordingly, state sovereign immunity raises 'a threshold question that must be resolved . . . before proceeding to the merits.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)).

"[T]he Eleventh Amendment precludes an individual from bringing a claim against a state or state agency under the ADEA, and federal courts do not have subject matter jurisdiction over such claims." *Bleichert v. New York State Educ. Dep't*, 793 F. App'x 32, 34 (2d Cir. 2019) (citing *McGinty*, 251 F.3d at 95); *see also Fetcho v. New York State Dep't of Tax'n & Fin.*, No. 10-cv-3881, 2012 WL 294396, at *3, 2012 U.S. Dist. LEXIS 11417, at *7-8 (E.D.N.Y. Jan. 27, 2012) ("Plaintiff cannot maintain his [ADEA claim] against Defendant because the New York

19

State Department of Taxation and Finance, as an agency of New York State, [ ] is shielded by the Eleventh Amendment from suits on these claims in federal court. The [ ] ADEA did not abrogate New York's immunity[.]" (internal citations omitted)). The Eleventh Amendment also bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in [their] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Accordingly, Plaintiff's ADEA claims against the Department and the state officials sued in their official capacity are barred by the Eleventh Amendment.

Further, Plaintiff's ADEA claim against Defendant Stafford would fail because the ADEA "does not provide a cause of action against individual supervisors"; "it contemplates only actions against 'employers'—here, the state." *See Bleichert*, 793 F. App'x at 34 (citing 29 U.S.C. § 630(b)); *see also Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 449-50 (E.D.N.Y. 2007) (collecting cases). Plaintiff's Title VII claim against Defendant Stafford would also fail because "individuals are not subject to liability under Title VII." *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004); (*see also* Dkt. No. 21, at 6).

As to Plaintiff's Title VII claims against the Department, the Proposed Amended Complaint does not include the factual narrative Plaintiff provided with his original Complaint. (*Compare* Dkt. No. 1 *with* Dkt. No. 20-1). Instead, the factual allegations in the Proposed Amended Complaint are almost entirely conclusory in nature. (*See, e.g.,* Dkt. No. 20-1, at 7 (alleging that Plaintiff "engaged in protected activity by opposing discrimination and

participating in the EEOC process); 8 (alleging that "[i]n or about June 2025, Defendant Stafford subjected Plaintiff to adverse employment action(s), including denial of promotion . . . for which Plaintiff was qualified, and instead selected Jessica Alberti, a similarly situated employee outside Plaintiff's protected class"); 9 (alleging that Plaintiff "was treated less favorably than similarly situated employees outside his protected class" and "subjected to adverse employment action because of age"). The Proposed Amended Complaint does not even allege Plaintiff's race, nor does it allege the race of any of the other non-parties who allegedly received more favorable treatment than Plaintiff. (*See id.* at 3 (alleging Plaintiff "is a member of one or more protected classes, including race/color/age")). *C.f. Whitt v. Buffalo Transportation Inc.*, No. 17-cv-673, 2018 WL 375844, at *2, 2018 U.S. Dist. LEXIS 5261, at *6 (W.D.N.Y. Jan. 11, 2018) (dismissing Title VII employment discrimination claim where Plaintiff "d[id] not even identify his own race, let alone assert any facts suggesting discrimination on that basis").

The conclusory allegations in the Proposed Amended Complaint fail to support Plaintiff's racial discrimination claims. *See Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("[F]or a discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." (internal quotations omitted and alterations adopted)); *Mumin v. City of New York*, 760 F. Supp. 3d 28, 51 (S.D.N.Y. 2024) ("Courts in this Circuit have routinely rejected Title VII claims (as well as claims under similar statutes that use the *McDonnell Douglass* framework) at the motion to dismiss stage where plaintiffs provide only generalized, conclusory allegations.") (collecting cases)). As such, the Court denies Plaintiff's motion to file the Proposed

Amended Complaint as futile, because it does not state a claim upon which relief may be granted. *See Ziccarelli*, 247 F. Supp. 3d at 452, 455.

### E.    Leave to Amend

Here, Plaintiff has already sought leave to amend the complaint once, but that was before the Court issued a ruling explaining its deficiencies (and the deficiencies in the Proposed Amended Complaint). In his motion for leave to amend, Plaintiff indicated that—in light of Defendants' motion to dismiss—Plaintiff "seeks to clarify party roles, narrow the temporal scope of actionable conduct, and align the pleadings with exhaustion requirements." (*See* Dkt. No. 20, at 1). Accordingly, although the Court denies Plaintiff's motion to amend with respect to the Proposed Amended Complaint, (Dkt. No. 20-1), the Court will grant Plaintiff leave to amend in light of this decision—but only with respect to the claims not barred by sovereign immunity. *See Yerdon v. Poitras*, 120 F.4th 1150, 1157 (2d Cir. 2024) (affirming district court dismissal of employment discrimination claims and noting that granting leave to amend would be futile, where relevant statutes did not permit "claims against individual employees, and sovereign immunity bar[red] such claims against state officials in their official capacities").

If Plaintiff seeks to file an amended complaint, he must do so within thirty days. Plaintiff is advised that any such Amended Complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). The Court reminds Plaintiff that any exhibits Plaintiff wishes the Court to consider going forward must be attached to any Amended Complaint. This means that his previous complaints

22

and other filings—including Plaintiff's "narrative," (Dkt. No. 1, at 19-29), and his EEOC charge, (*Id.* at 15)—will no longer be the operative documents containing his pleadings and exhibits; everything that is essential must be contained in or attached to the Amended Complaint.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for leave to file the Proposed Amended Complaint (Dkt. No. 20) is **DENIED** as futile, and the proposed amended complaint (Dkt. No. 20-1) is **REJECTED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that, if Plaintiff wishes to proceed against Defendants Miller, Wagner, Catalano, Linn, Carknard, Schoonmaker, Rider, and Lewis, Plaintiff must file proof of service within thirty (30) days of the date of this Order; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, Defendants are directed to file an answer to the original Complaint (Dkt. No. 1) in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that, if Plaintiff neither files an amended complaint nor proof of service on Defendants Miller, Wagner, Catalano, Linn, Carknard, Schoonmaker, Rider, and Lewis within thirty (30) days of the date of this Order, all claims against Defendants Miller, Wagner, Catalano, Linn, Carknard, Schoonmaker, Rider, and Lewis will be dismissed without prejudice pursuant to

Federal Rule 4(m), and the Clerk is directed to terminate those Defendants without further order from the Court.

**IT IS SO ORDERED.**

Dated: <u>May 7, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

24